Philip C. Swain (SBN 105322)
*pswain@foleyhoag.com*
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617.832.1000
Fax: 617.832.7000

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONOS, INC. <br><br> Plaintiff, <br><br> vs. <br><br> LENBROOK INDUSTRIES LIMITED and LENBROOK AMERICA CORP. <br><br> Defendant. | Case No. 2:19-cv-5411 <br><br> FIRST ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIMS <br><br><br> Date:        November 20, 2019 |

**FIRST AMENDED ANSWER AND COUNTERCLAIMS**

Pursuant to Federal Rules of Civil Procedure 7 and 12, Defendants Lenbrook Industries Limited ("Lenbrook Industries") and America Corp. ("Lenbrook America")[1], by and through the undersigned counsel, hereby respond and allege as follows to the Complaint filed by Sonos, Inc. ("Sonos" or "Plaintiff") in accordance to the numbered paragraphs. To the extent the unnumbered headings contained in the Complaint contain allegations supporting Sonos's allegations, they are denied.

---

[1] Lenbrook Industries denies that this Court has personal jurisdiction, because, as explained herein, Lenbrook Industries is a Canadian corporation, and does not have any place of business in this district or in the United States. Lenbrook Industries is not registered to do business in California or the United States. Lenbrook Industries sells and imports products into the United States through its subsidiary, Lenbrook America. Therefore, except as expressly alleged herein, the remainder of this response is being submitted on behalf of Lenbrook America Corp. To the extent that any of the allegations of the complaint legitimately concern Lenbrook Industries, Lenbrook Industries adopts Lenbrook America's response to the allegations.

Except as expressly admitted herein, Lenbrook America denies all allegations in the Complaint.

1.      Admitted in part and denied in part.  Lenbrook America understands this to be an action by Sonos against Lenbrook America and Lenbrook Industries alleging infringement of United States Patent Nos. 8,588,949, 9,195,258, 9,219,959, 8,868,698, 9,883,234, 8,938,312, and 9,252,721 (collectively, "patents-in-suit").  Except as expressly admitted, Lenbrook America denies the allegations of paragraph 1.

**INTRODUCTION**

2.      Lenbrook America denies that Sonos invented multi-room wireless home audio technology.  Lenbrook America admits that Sonos first introduced products in or around 2004 or 2005.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and thus denies them.

3.      Lenbrook America denies that Sonos reinvented home audio for the digital age.  Nor did Sonos singlehandedly establish the stand-alone wireless home speaker system category.  Lenbrook America affirmatively states that it is inaccurate and inappropriate to allege or suggest that one company invented or reinvented digital home audio or the stand-alone wireless home speaker.  Further, Sonos's claim of "reinvention" disregards the contributions of many other companies that helped conceptualize, innovate, and pioneer connected, streaming and multi-room audio solutions, including Barix (Exstreamer), Slim Devices/Squeezebox, Netstreams, Yamaha (Music Cast), Roku, and Cirrus Logic (Cobranet).  Wireless and multi-room audio features and functions evolved as natural extensions of the consumer audio and the residential installation business that many consumer audio brands had already established.  In fact, digital audio and connected audio solutions began at least 20 years before Sonos entered the marketplace.

2

Sonos chose to file a 90-page, 75 exhibit complaint against Lenbrook Industries and Lenbrook America—rather than submit a short and plain statement of the grounds for the court's jurisdiction and the claims and a demand for the relief sought. The complaint includes, amongst a host of exaggerated allegations, a suggestion that, among other things, Lenbrook Industries' Bluesound technology was somehow copied from Sonos based on one of Lenbrook Industries' divisions having distributed Sonos products (among many other products that it distributed) in Canada for 10 months in 2007 – 2008. Lenbrook America denies such allegations. Lenbrook America states that Lenbrook Industries has distributed products for many well-known international audio brands since 1978. In fact, Lenbrook Industries has a more than 40-year history of innovation in the audio industry, including through its brands NAD Electronics ("New Acoustic Dimension") and PSB Speakers.

The complaint strains to suggest that the Bluesound high-resolution audio products somehow compete with Sonos by including quotations from industry publications that are taken out of context and presented in a misleading manner, when Sonos itself has never described Bluesound as a competitor. Sonos's excessive claims of innovation and of Bluesound's supposed copying are puzzling because, while both companies are participants in the "connected audio market," the Bluesound products are not direct competitors of Sonos. Sonos's public financial statements list its direct competition, but those financial statements do not list Bluesound as a competitor. Bluesound is a premium high-resolution niche market audiophile brand, competing in an entirely different sector of the digital audio market than the sector in which Sonos competes. Sonos primarily competes with other less expensive, more broadly available, and more widely recognized retail audio brands such as Apple, Amazon, Google, Samsung/Harman, BOSE and Sony. Contrary to Sonos's allegations, media outlets and the press have always acknowledged the differences, stating that Bluesound is highly differentiated from such mass market products.

Sonos's unnecessary and overreaching allegations concerning Bluesound in its complaint are especially puzzling because they are being made against a much smaller company, with a correspondingly much smaller customer base and sales.

Lenbrook America further affirmatively states that the award-winning Bluesound high-resolution audio products were independently developed and do not infringe Sonos's patents.



Lenbrook Industries was the first company to launch a commercially successful family of multi-room and wireless solutions that are fully capable of managing the highest resolution audio platforms.  As stated, Lenbrook Industries' brands PSB Speakers (loudspeakers) and NAD Electronics (amplifiers/electronics) had been in the audio business for almost three decades before Sonos entered the business, and had been long recognized as market leaders in their niche.  The Bluesound technology and brand were developed as the natural evolution of those predecessor, premium, niche brands.  As just one example (of several that are illustrated further in response to paragraph 10 of the complaint below) of the evolution of the Bluesound products is Bluesound's PULSE FLEX, which evolved from the PSB Alpha Intro, first introduced in 1996, 17 years before the Sonos PLAY:1 was introduced in 2013.   The PSB Alpha Intro was designed by PSB founder

4

and Lenbrook Industries' employee, Paul Barton, who has been designing premium home loudspeakers for 50 years and has also been responsible for the speaker designs used in Bluesound.

Lenbrook America also affirmatively states that the speaker acoustics team at PSB Speakers and the electronics/amplifier design team at NAD Electronics have been collaborating on active speakers, subwoofers, and multi-room audio solutions for decades. PSB also developed a host of horizontal center channel speakers that provided the foundation for products in the Bluesound PULSE family of all-in-one speakers. Other Bluesound products evolved from PSB and NAD products, as illustrated further in response to paragraph 10 below.

Lenbrook America further states the Bluesound products do not infringe the asserted patents, nor are the patents valid. As one example, the validity of Sonos's U.S. Patent (the "'258 patent") on synchronization could be challenged based on, among other evidence, patents owned by Philips (U.S. Patent No. 7,269, 338 ("Janevski")) and a computer systems company (Dell) (U.S. Patent No. 5,642,171), and the expert testimony cited by Sono's expert Roman Chertov in Sonos's recent *Inter Partes* Review challenges of two synchronization patents owned by Implicit LLC (IPR 2018-00766, challenging the validity of US Patent No. 7,391,791; and IPR 2018-00767, challenging the validity of U.S. Patent No. 8,942,252). The '258 patent could also be challenged based on other prior art, including, as further discussed below, the Barix Exstreamer invention, which included synchronization capability and was offered for sale and demonstrated at multiple shows in the United States in 2002 and 2003, at least one of which was attended by Sonos representatives, but which Sonos did not disclose to the patent examiner during the course of the '258 patent prosecution.

In the audio industry, products evolve as the market and consumer demands change. Indeed, Sonos's chief product officer, Nick Millington, testified in the *Sonos v. D&M Holdings* litigation that, in or about 2003-2006, Sonos had a practice, like others in the industry, of looking at what other

technologies were being used by competitors and tearing down competitive products.  Thus, Sonos's first commercial products, such as the ZP 100 introduced in or about 2005, were developed during a time when Sonos/Rincon (the predecessor name for Sonos) had a standard practice of breaking down and studying other companies' audio products.  Sonos's ZP 100 and the replacement ZP 120 product included a two-chip architecture similar to that used in the Barix Exstreamer for data networking and decoding of audio streams, even though a single-chip solution for data networking and audio decoding was feasible and available as early as 1999.   In fact, after Bluesound was launched using a single-chip NXP architecture, Sonos eventually adopted a single-chip architecture with an NXP processor for its Sonos One and later products.

Similarly, there are many products in the consumer audio industry that have evolved based on the market and the need to meet market demand.  For example, since 2009, Lenbrook Industries' NAD and Bluesound brands have been including digital switching amplifier technology (direct digital feedback amplifier, or DDFA, which Lenbrook Industries began working on in 2005 in collaboration with Zetex Diode, a semiconductor company whose technology is now part of Qualcomm).[2]  The "Sonos AMP" (launched in 2018) also included a digital amplifier design very similar to the Bluesound Powernode (launched in 2015).  Moreover, Sonos recently launched the "Play Move" all-in-one speaker with Bluetooth functionality and battery power features that have been available in the Bluesound Flex since its launch in 2015.  .

Another of Sonos's unnecessary and unfounded allegations was that the Bluesound marketing style imitated Sonos's "family photo" marketing style.  In fact, such family views have been used by companies in the audio space long before Sonos.  For example, as illustrated further in

---

[2] See, e.g., The Absolute Sound (http://www.theabsolutesound.com/articles/nad-m2-direct-digital-amplifier-tas-198-1/)

B5062886.3

response to paragraph 12 below, Lenbrook Industries' PSB brand has used family photos since at least 1996.

Lenbrook America denies the remaining allegations of paragraph 3. To the extent the allegations of paragraph 3 seek to paraphrase or characterize the contents of the articles contained in Exhibits 8-11, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

4.      Lenbrook America admits that Sonos has released a variety of wireless audio products. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4. To the extent the allegations of paragraph 4 seek to paraphrase or characterize the contents of the articles contained in Exhibits 12-17, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

5.      Lenbrook America admits that Sonos purports to own a large number of patents, and that some of those patents are identified on Sonos's website. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5. To the extent the allegations of paragraph 5 seek to paraphrase or characterize the contents of the articles contained in Exhibits 18-21, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

6.      Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6, and thus denies them. As a decades long player in the premium audio industry with technical understanding from the earliest days of high performance audio and related technologies, Lenbrook America states that the Lenbrook Industries' technical team and its technology and software development partners and contractors have a large amount of audio design knowledge and experiences they have used and still use in the course of their own product development. To the extent the allegations of paragraph 6 seek to paraphrase or characterize

the contents of the article contained in Exhibit 22, Lenbrook America denies the allegations to the extent that they are inconsistent with the article.

7.      Admitted in part and denied in part.  Lenbrook America admits that Sonos joined the consumer audio business in or about 2004 or 2005.  Lenbrook America affirmatively states that, by 2004, Lenbrook Industries' divisions NAD Electronics and PSB Speakers had been involved in the consumer audio business for over 30 years.  NAD and PSB products were sold in the United States through Lenbrook America.  Lenbrook Industries, through PSB, in partnership with well-known speaker designer Paul Barton, developed expertise in loudspeaker design, acoustics and know-how, and became well known for offering and selling premium consumer loudspeakers, home theater speakers and subwoofers (passive and active), custom installation speakers (in wall and in ceiling), outdoor/universal speakers, soundbars (passive and active), and premium headphones.  Similarly, by 2004, Lenbrook Industries, through NAD, had developed a wide variety of amplifiers (both analog and digital) and a variety of music sourcing products (both analog and digital).  Thus, Lenbrook Industries had become a recognized leader in specialty consumer audio, with many products that were highly regarded by audio critic reviews from around the world.  Further, as a result of NAD's and PSB's experience, particularly in the growing custom installation market, Lenbrook Industries Lenbrook Industries was already aware of consumer interest in multi-room audio, music file sharing, and early streaming of digital music files.  Thus, NAD had begun developing multi-room audio amplifier solutions (e.g., the Netcap networked audio device) over 20 years ago, in the late 1990's and early 2000's.  Thus, on or about the time that Sonos joined the consumer audio business, NAD demonstrated the Netcap IP connected device at the CEDIA home technology industry show in September 2004.  Lenbrook Industries through NAD and PSB continued its development of multi-room audio solutions after 2004, and in 2013, introduced Bluesound as a brand of high-resolution wireless audio devices.

Lenbrook America admits that these products include the PULSE FLEX, PULSE FLEX 2i, PULSE MINI, PULSE MINI 2i, PULSE, PULSE 2, PULSE 2i, PULSE SOUNDBAR, PULSE SOUNDBAR 2i, PULSE SUB, NODE, NODE 2, NODE 2i, POWERNODE, POWERNODE 2, POWERNODE 2i, VAULT, VAULT 2, and VAULT 2i.  Lenbrook America admits that these products are controlled by the BluOS Controller app for iOS, Android, Kindle, PC, or Mac. Lenbrook America denies the remaining allegations of paragraph 7.

8.      Admitted in part and denied in part.  Lenbrook America admits that, for a period of 10 months, from May 2007 to July 2008, Sonos hired a Canadian distribution division of Lenbrook Industries to be a Canadian distributor (among many other audio products which that division was distributing).  Lenbrook America denies that Lenbrook Industries' experience as a Sonos distributor during those 10 months was a catalyst for Lenbrook Industries' launch of the Bluesound products in 2013.  Lenbrook America denies the remaining allegations of paragraph 8.  Further, Lenbrook Industries' development personnel for the Bluesound products were not involved with Sonos products during the 10-month period that Lenbrook Industries served as a Canadian distributor (or at any other time).

9.      Lenbrook America denies that the Bluesound products compete with Sonos's wireless audio products.  Lenbrook America further states that Sonos's selected excerpts from the cited and attached media articles are out of context and misleading.  In fact, the audio media have recognized that Bluesound is highly differentiated from Sonos and other market products and are not designed to compete directly with Sonos.  *See*, e.g., www.strata-gee.com[3] ("Bluesound is designed to be positioned above brands like Sonos in terms of price and performance…but tuck underneath some of the higher-end solutions such as those offered by NAD and others.");  www.residentialsystems.com[4]

---

[3] https://www.strata-gee.com/lenbrook-hopes-line-will-make-blue/
[4] https://www.residentialsystems.com/news/lenbrook-launches-bluesound-brand

1

2

3

("Bluesound, the new Lenbrook Industries brand, has rolled out its first wireless multi-room audio products, which are positioned as a step up from Sonos wireless-audio systems in performance and price.").

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Additionally, Lenbrook America affirmatively states Sonos and Lenbrook America compete in two distinct segments of the consumer audio industry and approach the market in different ways. Sonos is a broadly known participant in the large retail market for consumer audio products, whereas Lenbrook America operates in the niche audiophile industry.  Sonos, which sells across many and most channels of distributions, including through large format and multi-location national and regional retail stores as well as through its website, positions its products to provide music around the home, and sells mainly integrated zone speakers.  The Bluesound system is marketed and sold to audiophiles primarily through higher-end independent dealers that can provide physical demonstrations and comparisons.  Bluesound products are positioned to be integrated into a premium audio customer's existing system, since audiophiles generally want to retain their chosen brands of electronics and audiophile level speakers.  An audiophile customer looking for the highest possible music file quality and sound performance would most likely seek out options like Bluesound that can provide the highest quality audio performance, the credibility of long time brands in the hi fi industry, and devices that support the highest resolution music files and streaming.

20

21

22

23

24

25

26

Additionally, Sonos itself has never acknowledged Bluesound products, Lenbrook Industries, or Lenbrook America as a competitor in its public financial statements.  For example, in its most recent 10-Q filing from the quarterly period ending June 29, 2019, Sonos stated, "Our competition includes established, well-known sellers of speakers and sound systems such as Bang & Olufsen, Bose, Samsung (and its subsidiaries Harman International and JBL), Sony and Sound United (and its subsidiaries Denon and Polk), and developers of voice-enabled speakers and systems such as

27

28

10

Amazon, Apple and Google. We could also face competition from new market entrants." Notably, Bluesound is not mentioned as a competitor or potential competitor.

Lenbrook America also affirmatively states that a comparison of the Bluesound and BluOS enabled product split and Sonos products split clearly illustrates the different markets in which these products operate. Within each brand are two categories of devices: speaker-based integrated zone players and component-based zone players. Sonos's most recent 10-K statement reports that 85% of Sonos's sales are speaker-based zone players and 15% are component-based. Sales of Bluesound and BluOS enabled products are the opposite: 73% component-based zone players and 27% speaker-based. The charts below illustrate how these product mixes are the opposite of each other. For all of these reasons, it is incorrect to allege that the Bluesound system has competed directly with Sonos for the sale of wireless audio products.




Lenbrook America denies the remaining allegations of paragraph 9. To the extent the allegations of paragraph 9 seek to paraphrase or characterize the contents of the articles contained in

Exhibits 15, 16, 25, and 26, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

10.    Lenbrook America denies the allegations of paragraph 10.  To the extent the allegations of paragraph 10 seek to paraphrase or characterize the contents of the article contained in Exhibit 16, Lenbrook America denies the allegations to the extent that they are inconsistent with the article.

Lenbrook America affirmatively states that a more accurate analysis of the audio market, along with a recognition of the mechanical details of loudspeaker construction, would show that loudspeakers in general, and particularly all in one speakers in the connected audio space, have followed a basic construction pattern so that there are many basic similarities in physical shape among different brands of speakers.  It is thus inaccurate for a more recent entrant like Sonos to allege that Bluesound or any other brand to have copied speaker box design.

Lenbrook America further states that Bluesound marketing practice follows industry norms and does not copy Sonos's marketing practices.  Sonos's allegation that the similarities in the appearance, features, and marketing of Bluesound and Sonos products is due to copying is baseless.  To the extent that the *Digital Trends* website states that Bluesound products "match up" with Sonos products, it is because those products are designed for recognized market niches that include both consumer speakers and audiophile-quality speakers.  The fact that the Bluesound product family includes a small, portable-sized speaker, a mid-sized speaker suitable for small rooms, a larger speaker for larger rooms and more demanding audio requirements, and a sound bar for home theater integration, does not prove copying, but rather that Bluesound is seeking to provide a set of products that meet consumer needs.  Many speaker manufacturers, including Lenbrook Industries' PSB brand beginning in the 1980's, have promoted similar "families" of products that seek to meet the same consumer needs.

12

Sonos's selected quotes from the *Digital Trends* site are inconsistent with the overall theme of the site, namely, that there are meaningful differences between Sonos and Bluesound products, both with respect to features and appearance.  For instance, with respect to features, *Digital Trends* explains that "Bluesound has loaded its products with extra features not found on any Sonos unit," including "the ability to play high-resolution audio files…."  Ex. 16 to Complaint.   With respect to appearance, *Digital Trends* notes that "Sonos's product line leaves the impression that the company is still refining its design language," whereas "Bluesound is more consistent with the look and feel of its products…."  *Id*.  As demonstrated below, these differences in appearance are significant.

Sonos's side-by-side comparison images of several Sonos and Bluesound products in paragraph 10, in an effort to demonstrate similarities in appearance, are misleading.  In fact, the entire Bluesound speaker product line features a unique and unusual design featuring in primary part hexagonal structures and sweeping front-to-back tapered lines.  These product designs are so unusual, in fact, that Bluesound engineers were required to develop solutions specifically tailored to balance the creative visual appearance with audiophile-level high-resolution audio quality.  These distinctive designs are not obvious in the front-facing photos provided by Sonos in paragraph 10, but a comparison of Bluesound and Sonos products viewed from other angles demonstrates the considerable difference between the product lines.

With respect to the PLAY:1 and PULSE FLEX, Sonos provides an image showing the two products side-by-side, from the front.  This shows only that the products, when viewed from the front, are similarly proportioned in terms of height and width.  However, their differences become apparent when viewed from other angles.  In particular, the PLAY:1 features rounded edges, with a grille that wraps around nearly the entire speaker, and when viewed from the top appears as a rounded square.  By contrast, the PULSE FLEX has a more traditional "bookshelf" speaker appearance from the front, with a typical front-facing speaker grille, but has a unique irregular

13

B5062886.3

hexagonal shape when viewed from the top, and from the sides and rear features a "tapered" shape with concave sides leading toward a robust rear input panel and oval speaker port.  These differences are illustrated by the following photos.

Top views:




Side views:




14

B5062886.3

Rear views:

 

The Bluesound Pulse Flex also traces its evolution to the PSB Alpha Intro from 1996, which was released about 17 years before the Sonos PLAY:1, as illustrated below:



With respect to the PLAY:3 and PULSE MINI, Sonos provides images showing the two products side-by-side, from a slightly angled front view. These images merely show that the products, when viewed from the front, are similarly proportioned in terms of height and width. However, the comparison is misleading. When viewed from other angles, the PLAY:3 has a trapezoidal shape, with a slightly rounded front grille and straight sides tapering in toward the back panel, which features prominent dotted ventilation holes and inputs. The PULSE MINI, on the other

15

hand, has the same overall design as the PULSE FLEX – specifically, it features a unique irregular hexagonal shape when viewed from the top, and from the sides and rear features a "tapered" shape with concave sides leading toward a rear input panel that is about one-third the length of the entire speaker.  The PULSE FLEX also has a large control panel on top, along with a built-in handle, versus the plain top of the PLAY:3.  These differences are shown in the photos below:

Top views:

 

Side views:

 

Rear views:

 

16

With respect to the PLAY:5 and PULSE 2, Sonos provides images showing the two products side-by-side, from a slight angled front view.  These images merely show that the products, when viewed from the front, are similarly proportioned in terms of height and width.  However, the comparisons are misleading.  When viewed from other angles, the PLAY:5 is brick-shaped, with a slightly rounded front grille, like many speakers in this category.  The PULSE 2 has the same design features as the PULSE FLEX and PULSE MINI – specifically, it features a unique irregular hexagonal shape when viewed from the top, and from the sides and rear features a tapered shape with concave sides leading toward a rear input panel that is about one-third the length of the entire speaker.  The PULSE 2 also has a large control panel on top, along with a built-in handle, versus the plainer top of PLAY:5.  These differences are shown in the photos below:

Top views:



Side views:




17

B5062886.3

1

Rear views:



The Bluesound PULSE 2 and PULSE 2i also trace their evolution from the PSB Alpha Intro CLR from 1996, which was released about 13 years before the Sonos PLAY:5, as illustrated below:



Moreover, the images of the comparison products in Sonos's complaint are misleading. With respect to the Sonos Playbar and Pulse Soundbar, Sonos's comparison images do not depict the products from the same angle: the Sonos Playbar photo shows a top view, and the Pulse Soundbar photo shows a front view. Notably, virtually all soundbars are long, thin, and rectangular when viewed from the front – they are meant to be positioned above or below a television set. But a

18

comparison of the Sonos and Pulse at different angles shows obvious dissimilarities between the two products.  Notably, the Sonos Playbar features a metallic finish visible from top, front, and rear angles, while the Pulse Soundbar is a single color.  From the front, the Sonos Playbar is a solid color with a distinctive metallic strip on the bottom, while the Pulse Soundbar is a solid color divided by a vertical stripe and circular indicator in the middle.  From the top, the Sonos Playbar is a solid color with a distinctive metallic strip on the rear portion, while the Pulse Soundbar is a solid color with an array of inputs in the center.  From the side, the Sonos Playbar has a squat, rectangular shape, with grille-like finish, a metallic border, and controls on one end.  The Pulse Soundbar, on the other hand, has a rounded, tapered design consistent with the design of other Bluesound products, along with the distinctive Bluesound B logo.  The differences in these products are illustrated in the photos below.

Front views:





Top views:



B5062886.3



Side views:



Rear views:





Nor did Sonos invent the soundbar.  Soundbars have existed for decades.  As illustrated below, Lenbrook Industries' brand PSB released the PSB Imagine W3 the same year Sonos released its Playbar.

20



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAYBAR v. PULSE SOUNDBAR**

1998 — ALTEC LANSING ADA106

2005 — POLK AUDIO SURROUNDBAR

2005 — YAMAHA YSP-1

SONOS PLAYBAR       2013 — PSB IMAGINE W3

2015 — PULSE SOUNDBAR

2018 — PULSE SOUNDBAR 2i

Oher basic design differences between Sonos and Bluesound products can be attributed to Bluesound's effort to differentiate its products to address the needs of high-end audio consumers and professional audio system installers. In fact, Sonos adopted some of these innovations after the Bluesound products were introduced.  For example, Bluesound introduced the ability to provide a direct connection to Wi-Fi networks without requiring an intermediate "bridge" product such as the Sonos Bridge.  Bluesound Generation 2 also provides wired infrared input connections, which allowed installers to hide the player inside furniture while allowing it to be controlled from an infrared remote control. Moreover, Bluesound provided the first networked audio player with "closed-loop" digital amplification, which Sonos later included in its Amp.  Similarly, Bluesound first provided powerful, ARM Cortex processors with custom-designed circuitry, while Sonos, which first used Hitachi legacy "Hedgehog" processors and limited RAM, later changed to the more powerful ARM processors (after Bluesound).  Further, Lenbrook Industries' NAD brand's NAD CI 580 was the first standalone network audio playback device supporting synchronized playback of four stereo zones, with a slim-line chassis with a single Ethernet connection.  Sonos's equivalent solution was four zone players in an equipment rack tray, requiring four separate Ethernet

B5062886.3

connections, before it transitioned to quad-core ARM processors with the introduction of the Sonos One smart speaker (after Bluesound).  Bluesound introduced the ability to stream music from Spotify Connect in 2014, while Sonos first relied on Spotify's legacy API, with its limited feature set, before implementing Spotify Connect (after Bluesound).

11.    Lenbrook America denies the allegations of paragraph 11.  To the extent the allegations of paragraph 11 seek to paraphrase or characterize the contents of the *Electronic House* article contained in Exhibit 27, Lenbrook America denies the allegations to the extent that they are inconsistent with the article.

Lenbrook America affirmatively states that Bluesound is directed to the app based, multi-room connected audio space, the fastest growing sector in consumer audio, which is addressed by many consumer audio companies, including Sonos.  Thus, media articles lump together those companies operating in the same sector.  Bluesound operates in a subsector of the consumer audio market, avoiding the broader retail market and intentionally seeking to avoid direct comparison and competition with non-premium retail market brands.  Many media articles and reviews have recognized that Bluesound is positioned apart from Sonos, with the only similarity being that both companies are in the same consumer connected audio industry, which is growing to include more and more retail market players.  Sonos, which does not have a high resolution product, does not directly compete in the smaller premium high-resolution audio subsector in which Bluesound operates.  Its products do not support the streaming quality that many of today's audiophiles are seeking.

Lenbrook America further affirmatively states that, as set forth in its response to paragraph 10, insofar as other media outlets have "matched up" Sonos and Bluesound products, it is because the products address standard and recognized market niches that span both the large retail market consumer speakers and audiophile-quality speakers.

22

12.     Lenbrook America denies the allegations of paragraph 12.  As stated previously, Lenbrook Industries' brands, including Bluesound, are not new entrants into the consumer audio space, and the Bluesound products have evolved from previous NAD and PSB designs.  Sonos's allegation that Bluesound imitated Sonos's marketing images is incorrect. Lenbrook America's marketing approach and messaging has focused on differentiating Bluesound as a high performance audio design for the audiophile, and featuring Bluesound's high resolution audio capabilities.

Further, to the extent that Sonos has alleged that Bluesound has "imitated the look and feel of Sonos's products and marketing style," as illustrated in the parties' respective product "family" photos, this allegation is incorrect.  As set forth in paragraph 10 of this Answer, the "look and feel" of Sonos products and Bluesound products are dissimilar.  The Sonos and Bluesound "family" also reflect these obvious differences.  Sonos's suggestion that its display of various Sonos speakers in a single "family" photo constitutes a unique "marketing style" that Bluesound has copied is also incorrect.  Sonos did not invent family photo marketing.  Family photo marketing has been used in many industries, including the speaker industry, for many decades. Speaker manufacturers routinely display speaker product lines in "family" photos in order to demonstrate to consumers the variety of choices – and sometimes interoperability, size differences, and so forth – within the product lines. For instance, the following "family" photos depict full lines of wireless speakers by companies other than Lenbrook America and Sonos:

23

B5062886.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Bose Lifestyle 650*:



*Yamaha Music Cast*:



*Klipsch Reference Premier HD*:



Moreover, Lenbrook Industries' brands PSB and NAD have themselves been publishing "family" photos of their product lines for years, including the following examples:



Therefore, to the extent Bluesound continued the PSB and NAD practice of using a "family" photo to market its Bluesound product line, it is not copying the "look and feel" of the Sonos product line, but merely continuing to adopt a common industry and internal marketing convention.

13.     Admitted in part and denied in part.  Lenbrook America admits the Complaint purports to be an action for patent infringement.  Except as expressly admitted, Lenbrook America denies the allegations of paragraph 13.  Lenbrook America further states, as referred to in the response to paragraph 10, the Bluesound system was designed to address the technical requirements

25

of the high-resolution audiophile market, and in no way was based on copying from Sonos or its patents.

14.     Paragraph 14 contains conclusions of law to which no answer is required.  To the extent an answer is required, Lenbrook America admits that Lenbrook Industries received a letter dated November 1, 2018 from George Lee of Lee, Sullivan, Shea, & Smith LLP.  Lenbrook Industries responded by contacting George Lee through the undersigned counsel, indicated that it is not aware of any infringement, but was willing to review Sonos's claims, requesting a copy of the licensing agreement referred to in the November 1, 2018 letter and related royalty schedule.  After the parties entered into a non-disclosure agreement on December 13, 2018, Sonos provided a claim comparison to some of its patents, but did not provide a standard licensing agreement or royalty schedule.  Lenbrook Industries' and Lenbrook America's counsel continued to discuss a potential license with Sonos's counsel, with the parties agreeing to extend the non-disclosure agreement (which Lenbrook Industries and Lenbrook America signed on May 1, 2019, but Sonos ultimately did not).  The parties then agreed to schedule a meeting to review Sonos's claims analysis and licensing program in May and later in June or early July 2019.  On the evening of Friday, June 7, counsel for Sonos sent a letter purporting to terminate the non-disclosure agreement, and then later that evening sent the letter referred to in paragraph 14 of the Complaint, identifying additional Sonos patents.  However, Sonos's counsel and the undersigned counsel continued to discuss scheduling a meeting to discuss a license, until June 13, 2019, when Sonos's counsel stated that Sonos was no longer willing to meet.  The Complaint was filed one week later, on June 20, 2019.  Lenbrook America denies the remaining allegations of paragraph 14.

15.     Admitted in part and denied in part.  Lenbrook America denies that it was aware of Sonos's claim that Bluesound products infringed any of Sonos's patents before Lenbrook Industries received the letter from Sonos's counsel on November 1, 2018 identified in paragraph 15.  Lenbrook

26

America admits that, after receiving the November 1 letter, it began reviewing the *Sonos Inc. v. D&M Holdings, Inc.*, C.A. No. 14-1330-RGA (D. Del.) litigation.

16.     Admitted in part and denied in part.  Lenbrook America denies that it was aware of Sonos's claim that Bluesound products infringed any of Sonos's patents before Lenbrook Industries received the letter from Sonos's counsel on November 1, 2018 identified in paragraph 16.  Lenbrook America admits that, after receiving the November 1 letter, it began reviewing the *Sonos Inc. v. D&M Holdings, Inc.*, C.A. No. 14-1330-RGA (D. Del.) litigation.

### THE PARTIES

17.     Admitted in part and denied in part.  Lenbrook America admits that Sonos is listed as the assignee of the patents-in-suit.  Lenbrook America is without knowledge sufficient to admit or deny the remaining allegations of paragraph 17, and thus denies them.

18.     Lenbrook America admits that Lenbrook Industries is a Canadian corporation with a principal place of business at 633 Granite Court, Pickering, Ontario Canada, L1W 3K1.  Bluesound International and Lenbrook International are unincorporated divisions of Lenbrook Industries Limited.  Neither Lenbrook Industries Limited nor any of its unincorporated divisions do business in the United States.  Lenbrook America further states that Lenbrook Industries is not registered to do business in California or the United States, nor is it licensed to import products into the United States or to do business in the United States.  Lenbrook Industries has never had an office in the United States.  Lenbrook America thus expressly denies that this Court has personal jurisdiction over Lenbrook Industries.

Lenbrook America is a subsidiary of Lenbrook Industries, and acts as its exclusive United States distributor.  Lenbrook America buys Bluesound products wholesale from Lenbrook Industries in Canada, and imports and sells them in the United States to dealers and retailers in the United

27

B5062886.3

States.  Lenbrook Industries does stand behind Lenbrook America in defending these claims of patent infringement.  Therefore, to the extent that any of the allegations of the complaint legitimately concern Lenbrook Industries, Lenbrook Industries adopts Lenbrook America's response to the allegations.

Lenbrook America admits that Lenbrook Industries has a Bluesound website which is available to customers in the United States.  Sales of Bluesound products from the Bluesound website are processed through a third party, Digital River Inc. ("Digital River").  Digital River, through its subsidiaries DR Global Tech, Inc. and Digital River Ireland Ltd., is the exclusive vendor for all sales made on the Bluesound website, including sales made to U.S. consumers.

However, it is unlikely that Sonos's counsel in this case could have a good faith belief that Lenbrook Industries does business in the United States.  Sonos's outside counsel knows or should have been aware that Lenbrook America or Digital River are the entities that sell Bluesound products in the United States since at least as early as 2015, when Sonos's outside counsel Lee Sullivan et al. purchased Bluesound products from the Bluesound website on multiple occasions, and had those products shipped to the counsel and to its technical consultant Roman Chertov.  The receipts for those sales would have indicated to the purchaser that the party collecting the revenue for the transaction was Digital River, not Lenbrook Industries.

19.     Admitted in part and denied in part.  Lenbrook America admits it is a Delaware corporation, that it is licensed to do business in California, and that it is a subsidiary of Lenbrook Industries.

Lenbrook America further states that, since 2017, it has not had an office at 20300 S. Vermont Avenue, Suite 265, Torrance, California, 90502 (the California Secretary of State website for Lenbrook America Corp., indicates the entity's address is 633 Granite Court, Attn:  Alan

28

B5062886.3

Whiting, Pickering, Ontario Canada  L1H6P3).  Lenbrook America does have a registered address in the United States at 2916 Walden Avenue, Suite 400, Depew, NY  14043.

Therefore, except as expressly admitted, Lenbrook America denies the allegations of paragraph 19.

20.     Lenbrook America admits that Lenbrook Industries designed and developed Bluesound products.  Lenbrook America further admits that it imports and sells and offers to sell Bluesound products in the United States and in the Central District of California.  Further, as described above, Lenbrook America admits that Lenbrook Industries has a Bluesound website, which is available to customers in the United States.  Lenbrook America denies the remaining allegations of paragraph 20.

## JURISDICTION AND VENUE

21.     Lenbrook America admits this is an action for patent infringement, and that this Court has subject matter jurisdiction over Lenbrook America.  Except as expressly admitted, Lenbrook America denies the allegations of paragraph 20.

22.     Lenbrook America denies that Lenbrook America or Lenbrook Industries has an established place of business in the Central District of California.  Lenbrook America denies that Lenbrook Industries has availed itself of the rights and benefits of the laws of the state of California, has transacted, conducted, or solicited business in the state of California, obtained revenue from customers for the sale or use of products in the state of California,  shipped, distributed, offered for sale, or sold Bluesound products to residents of the state of California or to residents in this District, delivered Bluesound products to the United States or this district, or committed acts of infringement in the State of California or this district.

Lenbrook America admits that it is registered to do business in California, and that it has sold Bluesound products, derived revenue from the sale of Bluesound products

29

in the state of California, and delivered Bluesound products to residents of the state of California and this district.  Lenbrook America denies that it has committed acts of infringement in the state of California or this district.

Further, as stated above in response to paragraph 18, Lenbrook America affirmatively states that Lenbrook America buys Bluesound products wholesale from Lenbrook Industries in Canada, and imports and sells them in the United States to dealers and retailers in the United States.  Lenbrook America further states that Lenbrook Industries has a Bluesound website, which is available to customers in the United States. Sales of Bluesound products from the Bluesound website are processed through a third party, Digital River.  Digital River, through its subsidiaries DR Global Tech, Inc. and Digital River Ireland Ltd., is the exclusive vendor for all sales made on the Bluesound website, including sales made to U.S. consumers.

Lenbrook America denies the remaining allegations of paragraph 22.

23.     Lenbrook America admits that it is registered to do business in California. Lenbrook America denies that it has an established place of business in the Central District of California.  The remaining allegations of paragraph 23 state legal conclusions to which no responses are required.

24.     The allegations of paragraph 24 state legal conclusions to which no responses are required.  To the extent a response is required, Lenbrook America does not contest venue with respect to Lenbrook America only.

**PATENTS-IN-SUIT**

**Background**

25.     Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and thus denies them.

B5062886.3

26.    Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 and thus denies them.

27.    Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 and thus denies them.

28.    Lenbrook America denies that Sonos revolutionized the field of home audio by developing new technological solutions to various problems with conventional audio systems. Moreover, as described herein, Lenbrook America furthers states that other companies, before Sonos, had developed and introduced wireless home audio products into the marketplace.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 28 and thus denies them.

29.    Lenbrook America admits that paragraph 29 purports to quote or cite from the specifications of the '949 patent and the '258 patent.  To the extent the allegations of paragraph 29 seek to paraphrase or characterize the contents of the '949 patent or '258 patent, Lenbrook America denies the allegations to the extent that they are inconsistent with those patents.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 29 and thus denies them.

30.    Lenbrook America admits that paragraph 30 purports to cite portions of the specifications of the '949 patent and the '258 patent. To the extent the allegations of paragraph 30 seek to paraphrase or characterize the contents of the '949 patent or '258 patent, Lenbrook America denies the allegations to the extent that they are inconsistent with those patents. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 30 and thus denies them.

31.    Lenbrook America admits that paragraph 31 purports to cite portions of the specifications of the '949 patent and the '258 patent.  To the extent the allegations of paragraph 31

31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

seek to paraphrase or characterize the contents of the '949 patent or '258 patent, Lenbrook America denies the allegations to the extent that they are inconsistent with those patents.  Lenbrook America denies Sonos's "zone players" provided new intelligence that was different from the prior art.  Moreover, as described herein, Lenbrook America furthers states that other companies, before Sonos, had developed and introduced wireless home audio products into the marketplace.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 31 and thus denies them.

32.     Lenbrook America admits that paragraph 32 purports to cite text from the specifications of the '949 patent and the '258 patent.  To the extent the allegations of paragraph 32 seek to paraphrase or characterize the contents of the '949 patent or '258 patent, Lenbrook America denies the allegations to the extent that they are inconsistent with those patents.  Lenbrook America denies Sonos's "zone players" or "controllers" provided new or different capabilities from the prior art.  Moreover, as described herein, Lenbrook America furthers states that other companies, before Sonos, had developed and introduced wireless home audio products into the marketplace.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 32 and thus denies them.

33.     Lenbrook America denies that Sonos's audio system provided an entirely new paradigm in home audio that improved upon the technological deficiencies of conventional audio systems.  Moreover, as described herein, Lenbrook America furthers states that other companies, before Sonos, had developed and introduced wireless home audio products into the marketplace.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 33 and thus denies them.

**U.S. Patent No. 8,588,949**

34.      Lenbrook America admits that Sonos is listed as the assignee of the '949 patent, and, and that a copy of the '949 patent is attached to the Complaint as Exhibit 1.  Lenbrook America denies the remaining allegations of paragraph 34.  Lenbrook America admits that U.S. Patent No. 8,588,949 (the "'949 patent") is entitled "Method and Apparatus for Adjusting Volume Levels in a Multi-Zone System," that Sonos is listed as the assignee of the '949 patent, and that a reexamination certificate for the '949 patent was issued on or about November 5, 2015, and that what appears to be a copy of the '949 patent and a reexamination certificate is attached as Exhibit 1 to the Complaint.  Lenbrook America denies the remaining allegations contained in paragraph 34.

35.      Lenbrook America admits that the '949 patent states that it is directed to devices, computer-readable media, and methods for controlling a plurality of players on a local area network.  Lenbrook America denies the remaining allegations of paragraph 35.

36.      Lenbrook America admits that paragraph 36 purports to include quotes from the text of the '949 patent.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 36 and thus denies them.

37.      Lenbrook America admits that paragraph 37 purports to include quotes from the text of the '949 patent.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 37 and thus denies them.

38.      Lenbrook America denies the allegations of paragraph 38.

39.      Lenbrook America denies the allegations of paragraph 39.

40.      Lenbrook America denies the allegations of paragraph 40.

41.      Lenbrook America denies the allegations of paragraph 41.

42.      Lenbrook America denies the allegations of paragraph 42.

43.      Lenbrook America denies the allegations of paragraph 43.

B5062886.3

44.     Lenbrook America admits that paragraph 44 purports to quote from an order from the District Court for the District of Delaware concerning the '949 patent.  Lenbrook America denies the remaining allegations in paragraph 44.

45.     Lenbrook America admits that paragraph 45 purports to quote from an order from the District Court for the District of Delaware concerning the '949 patent.  Lenbrook America denies the remaining allegations in paragraph 45.

46.     Lenbrook America denies that the group volume control technology of the '949 patent provides significant advantages over the prior art.  To the extent the allegations of paragraph 46 seek to paraphrase or characterize the contents of the articles contained in Exhibits 8-11, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles. Lenbrook America denies the remaining allegations of paragraph 46.

47.     Lenbrook America denies that Bluesound incorporated Sonos's patented technology into its products and denies marketing the features that the alleged technology enables.  Lenbrook America admits that the Bluesound website includes a webpage entitled "How Do I Adjust the Volume for My Selected Bluesound Player?"  Lenbrook America denies the remaining allegations of paragraph 47.

## U.S. Patent No. 9, 195,258

48.     Lenbrook America admits that Sonos is listed as assignee of U.S. Patent No. 9,195,258 (the "'258 patent"), and that it is entitled "System and Method for Synchronizing Operations Among a Plurality of Independently Clocked Digital Data Processing Devices. Lenbrook America admits that what appears to be a copy of the '258 patent is attached as Exhibit 2 to the Complaint.  Lenbrook America denies the remaining allegations contained in paragraph 48.

49.     Lenbrook America admits that the '258 patent states that it is directed to devices, systems, and methods for synchronizing audio playback.  Lenbrook America denies the remaining allegations of paragraph 49.

50.     Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50, and thus denies them.

34

51.     Lenbrook America denies the allegations of paragraph 51.

52.     Lenbrook America denies the allegations of paragraph 52.

53.     Lenbrook America denies the allegations in paragraph 53.  Lenbrook America affirmatively states that Sonos has set forth a different statement about the inventiveness of synchronized audio playback in connection with its challenges in the Patent Trial and Appeal Board to the validity of patents on synchronization owned by Implicit, LLC (IPR 2018-00766, challenging the validity of US Patent No. 7,391,791; and IPR 2018-00767, challenging the validity of U.S. Patent No. 8,942,252).  Sonos's expert, Roman Chertov, has stated that prior art patents from one of the largest electronics companies in the world (Philips), U.S. Patent No. 7,269, 338 ("Janevski") and a computer systems company (Dell) U.S. Patent No. 5,642,171 ("Baumgartner") render a similar invention on synchronizing playback of two or more digital streams unpatentably obvious:  A person having ordinary skill in the art would appreciate that the challenged patent on audio synchronization, Janevski, and Baumgartner "all have the same general objective, which is to synchronize the playback of multiple streams of multimedia content." *See, e.g.*, Balassanian (Implicit LLC U.S. Patent No. 8,942,252) at 1:54-56 (stating that "[i]t would be desirable to have the technique that would facilitate the rendering of the multimedia presentation in a synchronized manner"); Janevski at 1:8-11 (stating that the "present invention" is directed to "techniques for synchronizing playback of two or more digital streams based on renderable content of those streams."); Baumgartner at 1:6-9 (stating that the "present invention" is directed to "synchronizing video and audio data streams in a computer system during a multimedia presentation.").  Moreover, Chertov has stated that a person having skill in the art would appreciate that the challenged patent, Janevski, and Baumgartner all express a desire to improve the accuracy of synchronizing playback of multiple streams of multimedia content to improve user of experience. '574 Provisional at pp. 1, 3; Janevski at Abstract, 3:43-57, 5:3-5; Baumgartner at 4:24-6:15." *See* Expert Declaration of Roman Chertov, at 71 – 72 (Sonos Exhibit 1009 in IPR 2018-00767).

In addition, two years before Sonos filed its application for the '258 patent, Barix AG of Switzerland offered for sale and demonstrated in the United States the synchronization capability of

35

its Barix Exstreamer invention, which was an audio decoder that could synchronize audio signals to other Exstreamer devices in a network to provide synchronized audio playback of an audio stream. At least one of Barix's Exstreamer demonstrations was attended by a Sonos representative.  Barix also illustrated the multi-room capabilities for its Exstreamer technology in a brochure dated September 2003 by showing its devices being used in several different rooms in a cut-away house (shown in a perspective view).  (Exhibit A hereto).  At that time, and prior to Sonos's introduction of its first product in 2005, Sonos employed a practice of studying competitors' products and breaking them down.  In fact, Sonos's chief product officer, Nick Millington, testified in the *Sonos v. D&M Holdings* litigation that in or about 2003-2006, Sonos had a practice, like others in the industry, of looking at what other technologies were being used by competitors, and tearing down competitive products.  On or about the time when Sonos introduced he ZP 100 product, it illustrated its Sonos zone players being used in several different rooms in a cut-away house (shown in a perspective view) (*See* Exhibit B hereto).  Sonos did not disclose the existence of the Barix Exstreamer to the patent examiner when it applied for the '258 patent or during the course of the '258 patent prosecution.

54.     Lenbrook America admits that paragraph 54 includes some quotes from the specification of the '258 patent.  Lenbrook America denies the remaining allegations in paragraph 54.  Lenbrook America further states that, with respect to the architecture of Sonos's first commercial products, such as the ZP 120 introduced in or about 2005, Sonos/Rincon (the predecessor name of Sonos) selected a two-chip architecture for data networking and decoding of audio streams, even though single-chip design solutions were feasible and available at least as early as 1999.  Notably, Barix AG had also selected a two-chip system architecture in its original Exstreamer product.  This two-chip system architecture implemented data networking functions in one chip, and decoding of audio streams in a second chip.  Although single-chip solutions for data networking and audio decoding were commonly available at the time (i.e., Cirrus Logic EP7209 and EP7211 ARM-based music media processors, available as early as 1999), Sonos chose a two-chip

solution for these central player device functions, as had Barix.  More recently, Sonos has updated its products to a single-chip solution.

55.  Lenbrook America denies the allegations in paragraph 55.

56.  Lenbrook America denies the allegations in paragraph 56.

57.  Lenbrook America denies the allegations in paragraph 57.

58.  Lenbrook America admits that the Patent Trial and Appeal Board issued a reexamination certificate for the '258 patent.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 58 and this denies them.

59.  Lenbrook America denies the allegations of paragraph 59.

60.  Lenbrook America denies that the alleged synchronization technology of the '258 patent provides significant advantages over the prior art that are important to wireless audio systems. To the extent the allegations of paragraph 60 seek to paraphrase or characterize the contents of the articles contained in Exhibits 8, 9 and 40-41, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

61.  Lenbrook America denies that the Bluesound products incorporated Sonos's patented technology, and that Bluesound products have been marketed to feature the infringing technology. Lenbrook America admits that the Bluesound website includes statements concerning grouping Bluesound players, and synchronization.   To the extent the allegations of paragraph 61 seek to paraphrase or characterize the contents of the Bluesound website, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles and refers to its website for its full contents.

**U.S. Patent No. 9,219,959**

62.  Lenbrook America admits that U.S. Patent No. 9,219,959 (the "'959 Patent") states that it is assigned to Sonos, is entitled "Multi Channel Pairing in a Media System," and that a reexamination certificate was issued by the USPTO concerning the '959 patent.  Lenbrook America admits that what appears to be a copy of the '959 Patent and a reexamination certificate is attached

37

1   as Exhibit 3 to the Complaint.  Lenbrook America denies the remaining allegations contained in

2   paragraph 62.

3          63.     Lenbrook America admits that the '959 patent states that it is directed to devices and

4   methods for providing audio in a multi-channel listening environment.  Lenbrook America denies

5   the remaining allegations of paragraph 63.

6          64.     Lenbrook America denies the allegations of paragraph 64.

7          65.     Lenbrook America denies the allegations of paragraph 65.

8          66.     Lenbrook America denies the allegations in paragraph 66.

9          67.     Lenbrook America denies the allegations in paragraph 67.

10          68.     Lenbrook America denies the allegations in paragraph 68.

11          69.     Lenbrook America denies the allegations in paragraph 69.

12          70.     Lenbrook America denies the allegations in paragraph 70.

13          71.     Lenbrook America admits that paragraph 71 quotes part of an order of the United

14   States District Court for the District of Delaware concerning the '959 patent.  Lenbrook America

15   denies the remaining allegations of paragraph 71.

16          72.     Lenbrook America admits that paragraph 72 quotes part of an order of the United

17   States District Court for the District of Delaware concerning the '959 patent.  Lenbrook America

18   denies the remaining allegations of paragraph 72.

19          73.     Lenbrook America denies that the alleged multi-channel pairing technology described

20   and claimed in the '959 patent provides significant advantages over the prior art that are important to

21   wireless audio systems.  To the extent the allegations of paragraph 73 seek to paraphrase or

22   characterize the contents of the articles contained in Exhibits 45-48, Lenbrook America denies the

23   allegations to the extent that they are inconsistent with the articles.

24          74.     Lenbrook America denies incorporating Sonos's patented technology into the

25   Bluesound products and denies that the Bluesound products were marketed using the features

26   described and claimed in the '959 patent.  Lenbrook America admits that the Bluesound website

27   describes pairing Bluesound speakers.  To the extent the allegations of paragraph 74 seek to

28                                                    38

paraphrase or characterize the contents of the Bluesound website, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

### U.S. Patent No. 8,868,698

75. Lenbrook America admits that U.S. Patent No. 8,868,698 (the "'698 patent") states that it is assigned to Sonos, and that it is entitled "Establishing a Secure Wireless Network with Minimum Human Intervention." Lenbrook America admits that what appears to be a copy of the '698 Patent is attached as Exhibit 4 to the Complaint. Lenbrook America denies the remaining allegations contained in paragraph 75.

76. Lenbrook America admits that the '698 patent states that it is directed to methods and computer-readable media for connecting a playback device to a network. Lenbrook America denies the remaining allegations of paragraph 76.

77. Lenbrook America admits that paragraph 77 purports to include quotes or cites from the text of the '698 patent. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 77 and thus denies them.

78. Lenbrook America admits that paragraph 78 purports to include quotes or cites from the text of the '698 patent. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 78 and thus denies them.

79. Lenbrook America admits that paragraph 79 purports to include quotes or cites from the text of the '698 patent. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 79 and thus denies them.

80. Lenbrook America denies the allegations in paragraph 80.

81. Lenbrook America denies the allegations in paragraph 81.

82. Lenbrook America denies the allegations in paragraph 82.

83. Lenbrook America denies the allegations in paragraph 83.

84. Lenbrook America denies the allegations in paragraph 84.

85. Lenbrook America denies the alleged playback-device-setup technology of the '959 patent provides significant advantages over the prior art that are important to wireless audio systems.

To the extent the allegations of paragraph 85 seek to paraphrase or characterize the contents of the articles contained in Exhibits 8 and 40, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

86.     Lenbrook America denies that Bluesound products incorporated Sonos's patented technology denies marketing any features that the alleged technology enables. Lenbrook America admits that the Bluesound website includes a webpage entitled "How Do I Connect My Bluesound Player to the Network?" To the extent the allegations of paragraph 86 seek to paraphrase or characterize the contents of the Bluesound website, Lenbrook America denies the allegations to the extent that they are inconsistent with those patents. Lenbrook America denies the remaining allegations of paragraph 86.

## U.S. Patent No. 9,883,234

87.     Lenbrook America admits that Sonos is listed as the assignee of the U.S. Patent No. 9,883,234 (the "'234 patent"), and that it is entitled "Systems and Methods for Networked Music Playback." Lenbrook America admits that what appears to be a copy of the '234 patent is attached as Exhibit 5 to the Complaint. Lenbrook America denies the remaining allegations contained in paragraph 87.

88.     Lenbrook America admits that the '234 patent states that it is directed to devices, methods, and computer-readable media for transferring playback of multimedia content from a control device zone group. Lenbrook America denies the remaining allegations of paragraph 88.

89.     Lenbrook America admits that paragraph 89 purports to include quotes or cites from the text of the '234 patent. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 89 and thus denies them.

90.     Lenbrook America admits that paragraph 90 purports to include quotes or cites from the text of the '234 patent. Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 90 and thus denies them.

91.     Lenbrook America denies the allegations in paragraph 91.

B5062886.3

92.     Lenbrook America admits that paragraph 92 purports to include quotes or cites from the text of the '234 patent.  Lenbrook America denies the remaining allegations in paragraph 92.

93.     Lenbrook America denies the allegations in paragraph 93.

94.     Lenbrook America denies the allegations of paragraph 94.

95.     Lenbrook America denies the allegations of paragraph 95.

96.     Lenbrook America denies the allegations of paragraph 96.

97.     Lenbrook America denies that the alleged technology described and claimed in the '234 patent provides significant advantages over the prior art that are important to wireless multi-room audio systems.  To the extent the allegations of paragraph 97 seek to paraphrase or characterize the contents of the articles contained in Exhibits 52 and 53, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

98.     Lenbrook America denies that the Bluesound products incorporate Sonos's patented technology, and that Bluesound products have been marketed to feature any technology described or claimed in the '234 patent.  Lenbrook America admits that the Bluesound website includes a webpage entitled "Is My Bluesound Player a Spotify® Connect Device?" To the extent the allegations of paragraph 98 seek to paraphrase or characterize the contents of the Bluesound website, Lenbrook America denies the allegations to the extent that they are inconsistent with the website. Lenbrook America states further that, on information and belief, that Sonos and Spotify have a licensing or cross licensing relationship that allows Spotify customers to use the Spotify Connect service, and thus any use of that service by Spotify customers, including on the Bluesound products, would be authorized.

**U.S. Patent No. 8,938,312**

99.     Lenbrook America admits that U.S. Patent No. 8,938,312 (the "'312 patent") states that it is assigned to Sonos, and is entitled "Smart Line-In Processing." Lenbrook America admits that what appears to be a copy of the '312 patent is attached as Exhibit 6 to the Complaint. Lenbrook America denies the remaining allegations contained in paragraph 99.

100.    Lenbrook America admits that the '312 patent states that it is directed to devices, methods, and computer-readable media for smart line-in processing.  Lenbrook America denies the remaining allegations of paragraph 100.

101.    Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 101 and thus denies them.

102.    Lenbrook America denies the allegations of paragraph 102.

103.    Lenbrook America denies the allegations of paragraph 103.

104.    Lenbrook America denies the allegations in paragraph 104.

105.    Lenbrook America denies the allegations in paragraph 105.

106.    Lenbrook America denies the allegations in paragraph 106.

107.    Lenbrook America denies the allegations in paragraph 107.

108.    Lenbrook America denies the allegations in paragraph 108.

109.    Lenbrook America denies the allegations of paragraph 109.

110.    Lenbrook America denies that the alleged technology described and claimed in the '312 patent provides significant advantages over the prior art that are important to wireless multi-room audio systems.  To the extent the allegations of paragraph 110 seek to paraphrase or characterize the contents of the articles contained in Exhibits 55-57, Lenbrook America denies the allegations to the extent that they are inconsistent with the articles.

111.    Lenbrook America denies that the Bluesound products incorporated technology described or claimed in the '312 patent, and that Bluesound products have been marketed to feature such technology.  Lenbrook America admits that the Bluesound website includes a webpage entitled "How do I enable Sound to Play Automatically From My TV?" To the extent the allegations of paragraph 111 seek to paraphrase or characterize the contents of the Bluesound website, Lenbrook America denies the allegations to the extent that they are inconsistent with the website.  Lenbrook America denies the remaining allegations of paragraph 111.

**U.S. Patent No. 9,252,721**

112.     Lenbrook America admits that Sonos is listed as assignee of U.S. Patent No. 9,252,721 (the "'721 patent"), and that it is entitled "Power Decrease Based on Packet Type." Lenbrook America admits that what appears to be a copy of the '721 patent is attached as Exhibit 7 to the Complaint.  Lenbrook America denies the remaining allegations contained in paragraph 112.

113.     Lenbrook America admits that the '721 patent states that it is directed to devices, methods, and computer-readable media for controlling an audio amplifier.  Lenbrook America denies the remaining allegations of paragraph 113.

114.     Lenbrook America admits that paragraph 114 purports to quote or cite from portions of the specification of the '721 patent.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 114, and thus denies them.

115.     Lenbrook America admits that paragraph 115 purports to include quotes or cites from the text of the '721 patent.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 115 and thus denies them.

116.     Lenbrook America admits that paragraph 116 purports to include quotes or cites from the text of the '721 patent.  Lenbrook America is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 116 and thus denies them.

117.     Lenbrook America denies the allegations of paragraph 117.

118.     Lenbrook America denies the allegations of paragraph 118.

119.     Lenbrook America denies the allegations of paragraph 119.

120.     Lenbrook America denies the allegations of paragraph 120.

121.     Lenbrook America denies the allegations of paragraph 121.

122.     Lenbrook America denies the alleged technology described and claimed in the '721 patent provides significant advantages over the prior art that are important to wireless multi-room audio systems. To the extent the allegations of paragraph 122 seek to paraphrase or characterize the contents of the article contained in Exhibit 59, Lenbrook America denies the allegations to the extent that they are inconsistent with the article.

B5062886.3

123.    Lenbrook America denies that Bluesound incorporated the technology described and claimed in the '721 patent into its products and denies that Bluesound products were marketed using the features that the alleged technology enables. Lenbrook America admits that the Bluesound website includes a webpage entitled "How Do I Turn Off My Bluesound Player?"  To the extent the allegations of paragraph 123 seek to paraphrase or characterize the contents of the Bluesound website, Lenbrook America denies the allegations to the extent that they are inconsistent with the website.  Lenbrook America denies the remaining allegations of paragraph 123.

## COUNT I

124.    To the extent that paragraph 124 incorporates allegations in previous paragraphs of the Complaint, Lenbrook America incorporates by reference all of its responses to those paragraphs, as if fully set forth herein.

125.    Lenbrook America denies the allegations of paragraph 125.

126.    Lenbrook America denies that it infringes the '949 patent.  The allegations of paragraph 126 of the Complaint, which cite claim language from the '949 patent that has not been construed by the Court, contain legal conclusions as to which no response is required.  Except as expressly admitted, Lenbrook America denies the remaining allegations in paragraph 126.

127.    Lenbrook America denies the allegations of paragraph 127.

128.    Lenbrook America denies the allegations of paragraph 128.

129.    Lenbrook America denies the allegations of paragraph 129.

130.    Lenbrook America denies the allegations of paragraph 130.

131.    Lenbrook America denies the allegations of paragraph 131.

132.    Lenbrook America denies the allegations of paragraph 132.

133.    Lenbrook America denies the allegations of paragraph 133.

134.    Lenbrook America denies the allegations of paragraph 134.

135.    Lenbrook America denies the allegations of paragraph 135.

## COUNT II

44

136.    To the extent that paragraph 136 incorporates allegations in previous paragraphs of the Complaint, Lenbrook America incorporates by reference all of its responses to those paragraphs, as if fully set forth herein.

137.    Lenbrook America denies the allegations of paragraph 137.

138.    Lenbrook America denies that it infringes the '258 patent.  The allegations of paragraph 138 of the Complaint, which cites claim language from the '258 patent that has not been construed by the Court, contain legal conclusions as to which no response is required. Except as expressly admitted, Lenbrook America denies the remaining allegations in paragraph 138.

139.    Lenbrook America denies the allegations of paragraph 139.

140.    Lenbrook America denies the allegations of paragraph 140.

141.    Lenbrook America denies the allegations of paragraph 141.

142.    Lenbrook America denies the allegations of paragraph 142.

143.    Lenbrook America denies the allegations of paragraph 143.

144.    Lenbrook America denies the allegations of paragraph 144.

145.    Lenbrook America denies the allegations of paragraph 145.

146.    Lenbrook America denies the allegations of paragraph 146.

147.    Lenbrook America denies the allegations of paragraph 147.

### COUNT III

148.    To the extent that paragraph 148 incorporates allegations in previous paragraphs of the Complaint, Lenbrook America incorporates by reference all of its responses to those paragraphs, as if fully set forth herein.

149.    Lenbrook America denies the allegations of paragraph 149.

45

B5062886.3

150.     Lenbrook America denies that it infringes the '959 patent.  The allegations of paragraph 150 of the Complaint, which recite claim language from the asserted patents that has not been construed by the Court, contain legal conclusions as to which no response is required. Except as expressly admitted, Lenbrook America denies the remaining allegations in paragraph 150.

151.     Lenbrook America denies the allegations of paragraph 151.

152.     Lenbrook America denies the allegations of paragraph 152.

153.     Lenbrook America denies the allegations of paragraph 153.

154.     Lenbrook America denies the allegations of paragraph 154.

155.     Lenbrook America denies the allegations of paragraph 155.

156.     Lenbrook America denies the allegations of paragraph 156.

157.     Lenbrook America denies the allegations of paragraph 157.

158.     Lenbrook America denies the allegations of paragraph 158.

159.     Lenbrook America denies the allegations of paragraph 159.

## COUNT IV

160.     To the extent that paragraph 160 incorporates allegations in previous paragraphs of the Complaint, Lenbrook America incorporates by reference all of its responses to those paragraphs, as if fully set forth herein.

161.     Lenbrook America denies the allegations of paragraph 161.

162.     Lenbrook America denies that it infringes the '698 patent.  The allegations of paragraph 162 of the Complaint, which cite claim language from the '698 patent that has not been construed by the Court, contain legal conclusions as to which no response is required. Except as expressly admitted, Lenbrook America denies the remaining allegations in paragraph 162.

46

B5062886.3

163.    Lenbrook America denies the allegations of paragraph 163.

164.    Lenbrook America denies the allegations of paragraph 164.

165.    Lenbrook America denies the allegations of paragraph 165.

166.    Lenbrook America denies the allegations of paragraph 166.

167.    Lenbrook America denies the allegations of paragraph 167.

168.    Lenbrook America denies the allegations of paragraph 168.

169.    Lenbrook America denies the allegations of paragraph 169.

170.    Lenbrook America denies the allegations of paragraph 170.

171.    Lenbrook America denies the allegations of paragraph 171.

### COUNT V

172.    To the extent that paragraph 172 incorporates allegations in previous paragraphs of the Complaint, Lenbrook America incorporates by reference all of its responses to those paragraphs, as if fully set forth herein.

173.    Lenbrook America denies the allegations of paragraph 173.  In addition, Lenbrook America affirmatively states that, to the extent that Spotify Ltd., Spotify AB, Spotify USA, or any other Spotify entity (collectively, "Spotify") is licensed or cross-licensed under the '234 patent, any use of the Spotify Connect service by Bluesound customers would be authorized under the license.

174.    Lenbrook America denies that it infringes the '234 patent.  The allegations of paragraph 174 of the Complaint, which cite claim language from the '234 patent that has not been construed by the Court, contain legal conclusions as to which no response is required. Except as expressly admitted, Lenbrook America denies the remaining allegations in paragraph 174.  Lenbrook America affirmatively states that, to the extent that Spotify Ltd., is licensed or cross-licensed under the '234 patent, any use of the Spotify Connect service by Bluesound

47

customers would be authorized under the license, and therefore such use would be authorized and therefore could not infringe the '234 patent.

175. Lenbrook America denies the allegations of paragraph 175. Lenbrook America affirmatively states that, to the extent that Spotify Ltd., is licensed or cross-licensed under the '234 patent, any use of the Spotify Connect service by Bluesound customers would be authorized under the license, and therefore such use would be authorized and therefore could not infringe the '234 patent.

176. Lenbrook America denies the allegations of paragraph 176. Lenbrook America affirmatively states that, to the extent that Spotify Ltd., is licensed or cross-licensed under the '234 patent, any use of the Spotify Connect service by Bluesound customers would be authorized under the license, and therefore such use would be authorized and therefore could not infringe the '234 patent.

177. Lenbrook America denies the allegations of paragraph 177.

178. Lenbrook America denies the allegations of paragraph 178.

179. Lenbrook America denies the allegations of paragraph 179.

180. Lenbrook America denies the allegations of paragraph 180.

181. Lenbrook America denies the allegations of paragraph 181.

182. Lenbrook America denies the allegations of paragraph 182.

183. Lenbrook America denies the allegations of paragraph 183.

**COUNT VI**

184. To the extent that paragraph 184 incorporates allegations in previous paragraphs of the Complaint, Lenbrook America incorporates by reference all of its responses to those paragraphs, as if fully set forth herein.

185. Lenbrook America denies the allegations of paragraph 185.

186. Lenbrook America denies that it infringes the '312 patent. The allegations of paragraph 186 of the Complaint, which cites claim language from the '312 patent that has not

48

been construed by the Court, contain legal conclusions as to which no response is required. Except as expressly admitted, Lenbrook denies the remaining allegations in paragraph 186.

187.    Lenbrook America denies the allegations of paragraph 187.

188.    Lenbrook America denies the allegations of paragraph 188.

189.    Lenbrook America denies the allegations of paragraph 189.

190.    Lenbrook America denies the allegations of paragraph 190.

191.    Lenbrook America denies the allegations of paragraph 191.

192.    Lenbrook America denies the allegations of paragraph 192.

193.    Lenbrook America denies the allegations of paragraph 193.

194.    Lenbrook America denies the allegations of paragraph 194.

195.    Lenbrook America denies the allegations of paragraph 195.

## COUNT VII

196.    To the extent that paragraph 196 incorporates allegations in previous paragraphs of the Complaint, Lenbrook America incorporates by reference all of its responses to those paragraphs, as if fully set forth herein.

197.    Lenbrook America denies the allegations of paragraph 197.

198.    Lenbrook America denies that it infringes the '721 patent.  The allegations of paragraph 198 of the Complaint, which cite claim language from the '721 patent that has not been construed by the Court, contain legal conclusions as to which no response is required. Except as expressly admitted, Lenbrook America denies the remaining allegations in paragraph 198.

199.    Lenbrook America denies the allegations of paragraph 199.

200.    Lenbrook America denies the allegations of paragraph 200.

201.    Lenbrook America denies the allegations of paragraph 201.

202.    Lenbrook America denies the allegations of paragraph 202.

203.    Lenbrook America denies the allegations of paragraph 203.

204.    Lenbrook America denies the allegations of paragraph 204.

49

205.    Lenbrook America denies the allegations of paragraph 205.

206.    Lenbrook America denies the allegations of paragraph 206.

207.    Lenbrook America denies the allegations of paragraph 207.

### PRAYER FOR RELIEF

WHEREFORE, Lenbrook America denies that Sonos is entitled to the relief requested in its Complaint.


### AFFIRMATIVE & ADDITIONAL DEFENSES

208.    Without prejudice to the denials set forth in this Answer and the ability to amend this Answer to seek and allege any and all defenses not presently known or that are revealed during the course of discovery or otherwise, Lenbrook America asserts the following affirmative defenses in response to Sonos's Complaint:

### FIRST AFFIRMATIVE DEFENSE

209.    This Court lacks personal jurisdiction over defendant Lenbrook Industries Limited.  The Complaint should therefore be dismissed as against Lenbrook Industries pursuant to Federal Rule of Civil Procedure 12(b)(2).

### SECOND AFFIRMATIVE DEFENSE

210.    Sonos's Complaint and each purported cause of action alleged therein fail to state facts sufficient to constitute a cause of action upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE

211.    Each claim of the '949, '258, '959, '698, '234, '312, and '721 patents that Sonos asserts against Lenbrook America is invalid for failing to comply with one or more provisions of the patent laws, as set forth in Part II of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, 112, and/or double patenting.

212.    The asserted claims of the '949 patent are invalid for failure to comply with one or more conditions of patentability under 35 U.S.C., including, without limitation, §§ 101, 102, 103, and 112, and/or for double patenting.  For example, the asserted claim 1 of the '949 patent

50

is invalid because the purported invention claimed therein is anticipated by prior art under § 102, including but not limited to U.S. Patent No. 6,703,940, and/or U.S. Patent Application 20020124097, and/or the Niles SV-4 Speaker Selection/Volume Control System, described in the attached Niles Installation and Operation Guide (Exhibit C hereto), and/or the Universal Plug and Play protocol (UPnP), or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

213.    The asserted claims of the '258 patent are invalid for failure to comply with one or more conditions of patentability under 35 U.S.C., including, without limitation, §§ 101, 102, 103, and 112, and/or for double patenting.  For example, the asserted claim 17 of the '258 patent is invalid because the purported invention claimed therein is anticipated by prior art, including but not limited to (1) U.S. Patent No. 7,269,338 under 35 U.S.C. § 102(e) and (2) public demonstrations, sales, and offers for sale of the Barix Exstreamer audio network interface device at least as early as 2002 under 35 U.S.C. § 102(a) and (b) as evidenced, *e.g.,* by The Exstreamer Technical Description Version 1.5 (2002) (Exhibit D hereto) and The Exstreamer Instruction Manual Version 1.5 (2002) (Exhibit E hereto), or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

214.    The asserted claims of the '959 patent are invalid for failure to comply with one or more provisions of 35 U.S.C., including, without limitation, §§ 101, 102, 103, and 112, and/or for double patenting.  For example, the asserted claim 10 of the '959 patent is invalid because the purported invention claimed therein is anticipated by prior art, including but not limited to U.S. Patent No. 8,688,431 under 35 U.S.C. § 102, or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

215.    The asserted claims of the '698 patent are invalid for failure to comply with one or more conditions of patentability under 35 U.S.C., including, without limitation, §§ 101, 102,

51

103, and 112, and/or for double patenting.  For example, the asserted claim 9 of the '698 patent

is invalid because the purported invention claimed therein is anticipated by prior art, including

but not limited to U.S. Patent Nos. 7,313,384 and 7,430,181 under 35 U.S.C. § 102 or would

have been obvious under § 103 from the foregoing references.  Lenbrook America will provide

further details concerning its invalidity contentions and any relevant documents during

discovery.

216.    The asserted claims of the '234 patent are invalid for failure to comply with one

or more conditions of patentability under 35 U.S.C., including, without limitation, §§ 101, 102,

103, and 112, and/or for double patenting.  For example, the asserted claim 1 of the '234 patent

is invalid because the purported invention claimed therein is anticipated by prior art, including

but not limited to U.S. Patent Application Publication No. US2008/0109852 under 35 U.S.C. §

102(b), or would have been obvious under § 103 from the foregoing reference.  Lenbrook

America will provide further details concerning its invalidity contentions and any relevant

documents during discovery.

217.    The asserted claims of the '312 patent are invalid for failure to comply with one

or more conditions of patentability under 35 U.S.C., including, without limitation, §§ 101, 102,

103, and 112, and/or for double patenting.  For example, the asserted claim 1 of the '312 patent

is invalid because the purported invention claimed therein is anticipated by prior art under § 102,

including but not limited to U.S. Patent Application 20080215169, and/or U.S. Patent

Application 20070220150, and/or U.S. Patent No. 8,601,394, or would have been obvious under

§ 103 from the foregoing references.  Lenbrook America will provide further details concerning

its invalidity contentions and any relevant documents during discovery.

218.    The asserted claims of the '721 patent are invalid for failure to comply with one

or more conditions of patentability under 35 U.S.C., including, without limitation, §§ 101, 102,

103, and 112, and/or for double patenting.  For example, the asserted claim 1 of the '721 patent

is invalid because the purported invention claimed therein is anticipated by prior art under § 102,

including but not limited to U.S. Patent No. 6,122,749, and/or U.S. Patent No. 6,119,239, and/or

1    WO Patent Application No. 1997/009756, or would have been obvious under § 103 from the

2    foregoing references.  Lenbrook America will provide further details concerning its invalidity

3    contentions and any relevant documents during discovery.

4                           **FOURTH AFFIRMATIVE DEFENSE**

5          219.    Lenbrook America has not infringed, and is not infringing, any valid and

6    enforceable claim of the '949, '258, '959, '698, '234, '312, and '721 patent.  Further, to the

7    extent that any claim of the asserted patents have been substantively amended after they were

8    granted, Lenbrook America is not liable for infringement under the doctrine of absolute and

9    equitable intervening rights.  It is the plaintiff's burden to establish infringement, and Lenbrook

10   America will provide details of its noninfringement contentions during discovery, in response to

11   any contentions of infringement by Sonos in which Sonos specifies where each limitation of each

12   asserted claim is found within each accused product.

13                           **FIFTH AFFIRMATIVE DEFENSE**

14         220.    To the extent that Sonos contends that the asserted claims are infringed by the

15   actions of two or more persons or entities to practice the steps of any asserted claim,  Lenbrook

16   America is not liable for infringing such claims to the extent that Lenbrook America does not

17   exercise control or direction over other any actor(s) who allegedly perform the any required steps

18   or limitations of the claims.

19                           **SIXTH AFFIRMATIVE DEFENSE**

20         221.    Sonos's claims of infringement are barred to the extent that Sonos has licensed

21   any of the asserted patents to a third party that practices any portion of the claimed invention(s),

22   in whole or in part, with the Bluesound technology, including but not limited to the '234 patent.

23                           **SEVENTH AFFIRMATIVE DEFENSE**

24         222.    Sonos is barred in whole or in part by the doctrines of unclean hands and waiver

25   from enforcing the patents-in-suit against Lenbrook America.

26         Further, Sonos is barred by the doctrine of unclean hands because, for example, as stated

27   above in paragraphs 174-76, to the extent that Spotify is licensed or cross-licensed under the

28                                          53

1    '234 patent, any use of the Spotify Connect service by Bluesound customers would be authorized

2    under the license and not an infringement.  By asserting the '234 patent, Sonos expands the

3    litigation and the cost and resources the parties and the court are forced to expend, which

4    constitutes litigation misconduct.

5         Sonos is also barred by the doctrine of waiver because, for example, as stated above,

6    Sonos's outside counsel Lee Sullivan et al. had prior communications with Lenbrook America by

7    purchasing Bluesound products from the Bluesound website on multiple occasions since at least

8    as early as 2015, which was shortly after Sonos filed the Denon litigation in October 2014.

9    Lenbrook America, like all in the wireless audio industry, knew of the Denon litigation.  The

10   Bluesound products were shipped to Sonos's counsel in the Denon litigation, Lee Sullivan et al,

11   and to Sonos's expert technical consultant Roman Chertov, undoubtedly for evaluation

12   technically.  Sonos's public financial statements have listed its direct competition, including

13   Apple, Amazon, Google, Samsung/Harman, BOSE and Sony, but those financial statements do

14   not list Bluesound as a competitor.  Sonos did not initiate a lawsuit until this instant case in 2019.

15   Moreover, to the extent that Spotify is licensed or cross-licensed under the '234 patent, any use

16   of the Spotify Connect service by Bluesound customers would be authorized under the license

17   and the allegation of infringement of the '234 patent by Bluesound customers using Spotify

18   Connect would be waived.

19                      **EIGHTH AFFIRMATIVE DEFENSE**

20        223.    Sonos's claim for relief and prayer for damages are limited by 35 U.S.C. §§ 286

21   and 287.  Sonos's recovery of costs is limited under 35 U.S.C. § 288.

22                      **NINTH AFFIRMATIVE DEFENSE**

23        224.    Upon information and belief, Sonos is barred in whole or in part by the doctrines

24   of patent exhaustion, patent misuse, or the first sale doctrine from enforcing the patents-in-suit

25   against Lenbrook America.

26        Specifically, Sonos is barred by the doctrine of patent exhaustion and the first sale

27   doctrine at least because Sonos to the extent that Spotify is licensed or cross-licensed under the

28                                            54

'234 patent, any use of the Spotify Connect service by Bluesound customers would be authorized under the license by Sonos.

Sonos is also barred by the doctrine of patent misuse because Sonos has impermissibly broadened the enforcement of at least the '234 patent with anti-competitive effect. For example, to the extent that Spotify is licensed or cross-licensed under the '234 patent, any use of the Spotify Connect service by Bluesound customers (or by any wireless audio company's customers or users) would be authorized under the license. On information and belief, Sonos is seeking to expand this puzzlingly large litigation against a relatively small company as leverage against its true competitors such as Apple, Amazon, Google, Samsung/Harman, BOSE and Sony, and is increasing the expense of this litigation by unnecessarily multiplying and expanding the proceedings with an excessive 90 page, 75 exhibit complaint, including the allegations of infringement of the '234 patent using the Spotify Connect service.

## TENTH AFFIRMATIVE DEFENSE

225.    Under the doctrine of absolute intervening rights, Lenbrook America is not liable for patent infringement of the '949 patent because the claims of the '949 patent were substantively changed when the reexamination certificate for the '949 patent issued on November 5, 2015. To the extent that Lenbrook America had existing products and orders or made substantial preparations to make, use, or sell its existing Bluesound products prior to reissue, it is entitled to intervening rights to continue to manufacture, use, or sell those products under the doctrine of equitable intervening rights.

226.    Under the doctrine of absolute intervening rights, Lenbrook America is not liable for patent infringement of the '959 patent because the claims of the '959 patent were substantively changed when the reexamination certificate for the '959 patent issued on April 5, 2017. To the extent that Lenbrook America had existing products and orders or made substantial preparations to make, use, or sell its existing Bluesound products prior to reissue, it is entitled to intervening rights to continue to manufacture, use, or sell those products under the doctrine of equitable intervening rights.

55

B5062886.3

**ELEVENTH AFFIRMATIVE DEFENSE**

227.     Sonos cannot satisfy the requirements applicable to its request for injunctive relief and has an adequate remedy at law.

**TWELFTH AFFIRMATIVE DEFENSE**

228.     Should Lenbrook America be found to infringe any claim of the '949, '258. '959, '698, '234, '312, or '721 patents, such infringement was not willful.

**COUNTERCLAIMS**

For their counterclaims against Sonos, Defendant Lenbrook America avers as follow:

**JURISDICTION AND VENUE**

229.     This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining an actual and justiciable controversy between the parties. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

230.     This Court has personal jurisdiction over Sonos because it has purposefully availed itself of the benefits and laws of this jurisdiction, including filing the instant action and doing business in this judicial district.

231.     Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

**FIRST CLAIM FOR RELIEF**
**(Invalidity of '949 Patent)**

232.     Lenbrook America repeats and realleges paragraph 229 through 231 above as though fully set forth herein.

233.     Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '949 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '949 patent.

234.     The claims of the '949 patent are invalid for failure to satisfy the conditions for patentability under Title 35 of the United States Code, including §§ 101, 102, 103, 112, and/or double patenting.  For example, the asserted claim 1 of the '949 patent is invalid because the

purported invention claimed therein is anticipated by prior art under § 102, including but not limited to U.S. Patent No. 6,703,940, and/or U.S. Patent Application 20020124097, and/or the Niles SV-4 Speaker Selection/Volume Control System, described in the attached Niles Installation and Operation Guide (Exhibit C hereto), and/or the Universal Plus and Play protocol (UPnP), or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

235.    Lenbrook America requests the Court declare the claims of the '949 patent are invalid.

**SECOND CLAIM FOR RELIEF**
**(Noninfringement of '949 Patent)**

236.    Lenbrook America repeats and realleges paragraph 229 through 235 above as though fully set forth herein.

237.    Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '949 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '949 patent.

238.    Lenbrook America does not and has not infringed, either directly or indirectly, any valid and enforceable claim of the '949 patent.  It is the plaintiff's burden to establish infringement, and Lenbrook America will provide details of its noninfringement contentions during discovery, in response to any contentions of infringement by Sonos in which Sonos specifies where each limitation of each asserted claim is found within each accused product.

239.    Under the doctrine of absolute and equitable intervening rights, Lenbrook America is not liable for patent infringement for any products that were made, offered for sale, sold or used before the issuance of the reexamination certificate for the '949 patent on November 5, 2015.

240.    Lenbrook America requests the Court to declare the claims of the '949 patent are not infringed.

57

B5062886.3

**THIRD CLAIM FOR RELIEF**
**(Invalidity of '258 Patent)**

241.     Lenbrook America repeats and realleges paragraph 229 through 240 above as though fully set forth herein.

242.     Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '258 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '258 patent.

243.     The claims of the '258 patent are invalid for failure to satisfy the conditions for patentability under Title 35 of the United States Code, including §§ 101, 102, 103, 112, and/or double patenting.  For example, the asserted claim 17 of the '258 patent is invalid because the purported invention claimed therein is anticipated by prior art, including but not limited to (1) U.S. Patent No. 7,269,338 under 35 U.S.C. § 102(e) and (2) public demonstrations, sales, and offers for sale of the Barix Exstreamer audio network interface device at least as early as 2002 under 35 U.S.C. § 102(a) and (b) as evidenced by, *e.g.*, The Exstreamer Technical Description Version 1.5 (2002) and The Exstreamer Instruction Manual Version 1.5 (2002), or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

244.     Lenbrook America requests the Court declare the claims of the '258 patent are invalid.

**FOURTH CLAIM FOR RELIEF**
**(Noninfringement of '258 Patent)**

245.     Lenbrook America repeats and realleges paragraph 229 through 244 above as though fully set forth herein.

246.     Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '258 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '258 patent.

B5062886.3

247.    Lenbrook America does not and has not infringed, either directly or indirectly, any valid and enforceable claim of the '258 patent.  It is the plaintiff's burden to establish infringement, and Lenbrook America will provide details of its noninfringement contentions during discovery, in response to any contentions of infringement by Sonos in which Sonos specifies where each limitation of each asserted claim is found within each accused product.

248.    Lenbrook America requests the Court to declare the claims of the '258 patent are not infringed.

### FIFTH CLAIM FOR RELIEF
### (Invalidity of '959 Patent)

249.    Lenbrook America repeats and realleges paragraph 229 through 248 above as though fully set forth herein.

250.    Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '959 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '959 patent.

251.    The claims of the '959 patent are invalid for failure to satisfy the conditions for patentability under Title 35 of the United States Code, including §§ 101, 102, 103, 112, and/or double patenting.  For example, the asserted claim 10 of the '959 patent is invalid because the purported invention claimed therein is anticipated by prior art, including but not limited to U.S. Patent No. 8,688,431 under 35 U.S.C. § 102, or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

252.    Under the doctrine of absolute and equitable intervening rights, it is not liable for patent infringement of the '959 patent because the claims of the '959 patent were substantively change when the reexamination certificate for the '959 patent issued on April 5, 2017.

253.    Lenbrook America requests the Court declare the claims of the '959 patent are invalid.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SIXTH CLAIM FOR RELIEF**
**(Noninfringement of '959 Patent)**

254.    Lenbrook America repeats and realleges paragraph 229 through 253 above as though fully set forth herein.

255.    Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '959 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '959 patent.

256.    Lenbrook America does not and has not infringed, either directly or indirectly, any valid and enforceable claim of the '959 patent.  It is the plaintiff's burden to establish infringement, and Lenbrook America will provide details of its noninfringement contentions during discovery, in response to any contentions of infringement by Sonos in which Sonos specifies where each limitation of each asserted claim is found within each accused product.

257.    Lenbrook America requests the Court to declare the claims of the '959 patent are not infringed.

**SEVENTH CLAIM FOR RELIEF**
**(Invalidity of '698 Patent)**

258.    Lenbrook America repeats and realleges paragraph 229 through 257 above as though fully set forth herein.

259.    Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '698 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '698 patent.

260.    The claims of the '698 patent are invalid for failure to satisfy the conditions for patentability under Title 35 of the United States Code, including §§ 101, 102, 103, 112, and/or double patenting.  For example, the asserted claim 9 of the '698 patent is invalid because the purported invention claimed therein is anticipated by prior art, including but not limited to U.S. Patent Nos. 7,313,384 and 7,430,181 under 35 U.S.C. § 102 or would have been obvious under §

60

103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

261.    Lenbrook America requests the Court declare the claims of the '698 patent are invalid.

### EIGHTH CLAIM FOR RELIEF
### (Noninfringement of '698 Patent)

262.    Lenbrook America repeats and realleges paragraph 229 through 261 above as though fully set forth herein.

263.    Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '698 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '698 patent.

264.    Lenbrook America does not and has not infringed, either directly or indirectly, any valid and enforceable claim of the '698 patent.  It is the plaintiff's burden to establish infringement, and Lenbrook America will provide details of its noninfringement contentions during discovery, in response to any contentions of infringement by Sonos in which Sonos specifies where each limitation of each asserted claim is found within each accused product.

265.    Lenbrook America requests the Court to declare the claims of the '698 patent are not infringed.

### NINTH CLAIM FOR RELIEF
### (Invalidity of '234 Patent)

266.    Lenbrook America repeats and realleges paragraph 229 through 265 above as though fully set forth herein.

267.    Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '234 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '234 patent.

61

268.    The claims of the '234 patent are invalid for failure to satisfy the conditions for patentability under Title 35 of the United States Code, including §§ 101, 102, 103, 112, and/or double patenting.  For example, the asserted claim 1 of the '234 patent is invalid because the purported invention claimed therein is anticipated by prior art, including but not limited to U.S. Patent Application Publication No. US2008/0109852 under 35 U.S.C. § 102(b), or would have been obvious under § 103 from the foregoing reference.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

269.    Lenbrook America requests the Court declare the claims of the '234 patent are invalid.

**TENTH CLAIM FOR RELIEF**
**(Noninfringement of '234 Patent)**

270.    Lenbrook America repeats and realleges paragraph 229 through 269 above as though fully set forth herein.

271.    Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '234 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '234 patent.

272.    Lenbrook America does not and has not infringed, either directly or indirectly, any valid and enforceable claim of the '234 patent.  It is the plaintiff's burden to establish infringement, and Lenbrook America will provide details of its noninfringement contentions during discovery, in response to any contentions of infringement by Sonos in which Sonos specifies where each limitation of each asserted claim is found within each accused product.

273.    Lenbrook America requests the Court to declare the claims of the '234 patent are not infringed.

**ELEVENTH CLAIM FOR RELIEF**
**(Invalidity of '312 Patent)**

274.    Lenbrook America repeats and realleges paragraph 229 through 273 above as though fully set forth herein.

B5062886.3

275.     Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '312 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '312 patent.

276.     The claims of the '312 patent are invalid for failure to satisfy the conditions for patentability under Title 35 of the United States Code, including §§ 101, 102, 103, 112, and/or double patenting.  For example, the asserted claim 1 of the '312 patent is invalid because the purported invention claimed therein is anticipated by prior art under § 102, including but not limited to U.S. Patent Application 20080215169, and/or U.S. Patent Application 20070220150, and/or U.S. Patent No. 8,601,394, or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

277.     Lenbrook America requests the Court declare the claims of the '312 patent are invalid.

### TWELFTH CLAIM FOR RELIEF
### (Noninfringement of '312 Patent)

278.     Lenbrook America repeats and realleges paragraph 229 through 277 above as though fully set forth herein.

279.     Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '312 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '312 patent.

280.     Lenbrook America does not and has not infringed, either directly or indirectly, any valid and enforceable claim of the '312 patent.  It is the plaintiff's burden to establish infringement, and Lenbrook America will provide details of its noninfringement contentions during discovery, in response to any contentions of infringement by Sonos in which Sonos specifies where each limitation of each asserted claim is found within each accused product.

63

B5062886.3

281.     Lenbrook America requests the Court to declare the claims of the '312 patent are not infringed.

### THIRTEENTH CLAIM FOR RELIEF
### (Invalidity of '721 Patent)

282.     Lenbrook America repeats and realleges paragraph 229 through 281 above as though fully set forth herein.

283.     Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '721 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '721 patent.

284.     The claims of the '721 patent are invalid for failure to satisfy the conditions for patentability under Title 35 of the United States Code, including §§ 101, 102, 103, 112, and/or double patenting.  For example, the asserted claim 1 of the '721 patent is invalid because the purported invention claimed therein is anticipated by prior art under § 102, including but not limited to U.S. Patent No. 6,122,749, and/or U.S. Patent No. 6,119,239, and/or WO Patent Application No. 1997/009756, or would have been obvious under § 103 from the foregoing references.  Lenbrook America will provide further details concerning its invalidity contentions and any relevant documents during discovery.

285.     Lenbrook America requests the Court declare the claims of the '721 patent are invalid.

### FOURTEENTH CLAIM FOR RELIEF
### (Noninfringement of '721 Patent)

286.     Lenbrook America repeats and realleges paragraph 229 through 285 above as though fully set forth herein.

287.     Based on Sonos's filing of this action, against Lenbrook America for alleged infringement of the '721 patent and Lenbrook America's affirmative defenses, an actual controversy has arisen and now exists between Sonos and Lenbrook America concerning the validity of the claims of the '721 patent.

64

B5062886.3

288.    Lenbrook America does not and has not infringed, either directly or indirectly, any valid and enforceable claim of the '721 patent.  It is the plaintiff's burden to establish infringement, and Lenbrook America will provide details of its noninfringement contentions during discovery, in response to any contentions of infringement by Sonos in which Sonos specifies where each limitation of each asserted claim is found within each accused product.

289.    Lenbrook America requests the Court to declare the claims of the '721 patent are not infringed.

## PRAYER FOR RELIEF

**WHEREFORE**, Lenbrook America respectfully prays for a judgment that:

A.   Dismisses the Complaint with prejudice;

B.   Denies all relief sought in the Complaint;

C.   Declares that the claims of the '949, '258, '959, '698, '234, '312, and '721 patents are invalid;

D.   Declares that Lenbrook America has not infringed the '949, '258, '959, '698, '234, '312, and '721 patents;

E.   Finds that this case is exceptional and awards attorney fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

F.   Awards such other and further remedies or relief at the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Lenbrook America hereby demands a jury trial as to all issues so triable.

65

B5062886.3

1   Respectfully submitted,

2   Dated: November 20, 2019

3                                           By:   _/s/ Philip C. Swain_
                                                  Philp C. Swain
4

5                                           FOLEY HOAG LLP
                                            Philp C. Swain (SBN 105322)
6                                           _pswain@foleyhoag.com_
                                            FOLEY HOAG LLP
7                                           Seaport West
                                            155 Seaport Boulevard
8                                           Boston, MA 02210-2600
                                            Tel: 617.832.1000
9                                           Fax: 617.832.7000

10                                          _Attorneys for Defendants Lenbrook Industries_
                                            _Limited and Lenbrook America Corp._
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  66